1 | SEC, DEPT. OF TREASURY,
C.R.I.S. EX REL. Janice Champion Relator
2 | 46601 Bautista Canyon Road
Hemet, California [92544]
3 | 951-260-0138
ausgeglichen@aol.com
4 |

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY
2018 JUN 11 PM 3: 20

FILED

5 |              UNITED STATES DISTRICT COURT
           CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION
6 |

7 | S.E.C., DEPT. OF TREASURY, C.R.I.S. EX    Case No.: Case No.: 5:18-CV-00866-VAP-FFM
REL. JANICE CHAMPION RELATOR.
          Plaintiffs,
8 |

9 | vs.                                        Honorable Chief Judge Virginia Phillips

10 | PLAZA HOME MORTGAGE INC.
STANLEY SNIFF SHERIFF ET AL.
          Defendants.                         WRITTEN RESPONSE WITH OBJECTIONS
11 |                                           UNDER LOCAL RULE 7-9 WITH DECLARATION
                                              IN SUPPORT THEREOF.

12 |

13 | JANICE CHAMPION PLAINTIFF RELATOR WRITTEN RESPONSE WITH OBJECTIONS and Declaration in

14 | Support thereof TO DEFENDANTS MOTION TO DISMISS BY JUDICIAL NOTICE UNDER F.R.E. 201 (a);

15 | 1.      STRATEGIC ACQUISTIONS LLC IS NOT AND WAS NOT REGISTERED OR LICENSED TO

16 | CONDUCT BUSINESS IN California ON 10/26/2006.

17 | 2.      Plaintiff Relator judicially Notices this Court and Objects to the STATEMENT OF FACTS OF

18 | DEFENDANTS UNDER LOCAL RULE 7-9; (c) Taking Notice. The court:

19 | (1) may take judicial notice on its own; or

20 | (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.

21 | 1. On the following grounds;

22 | a.      There is no evidence, documents or documentation evidencing or establishing that PLAZA HOME

23 | MORTGAGE INC. was a Licensed Loan Originator in the state of California on 10/26/2006 or is registered with

24 | DEPT. OF TREASURY UNDER FINCEN FORMS 104 and 114a AS THE SOURCE BANK at closing of

25 | Escrow under THE U.S. BANK SECRECY ACT and U.S. PATRIOT ACT to reveal the source of the funds by

26 | filing Currency Transaction Reports, Currency and Monetary Instrument Transportation Forms CMIR's under §§

27 | 5311 et seq. of 31 U.S.C. of THE BANK SECRECY ACT and 31 CFR § 103.11 regulations et seq., under the

28 | WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN
SUPPORT THEREOF. - 1



1   U.S. PATRIOT ACT and SEC Rule 17a-8-17a-10, which applies to all broker-dealers, incorporates the

2   requirements of the Bank Secrecy Act to file reports and maintain records showing the source of the funds that

3   allegedly funded and perfected the Mortgage Loan Applications, Promissory Notes and securing Petitioners Real

4   Property under the subject Deeds of Trust.

5   b.        There is no Legal, Valid DEED OF TRUST, TRUST or NOTE under § 2934a of the California civil code

6   evidencing a valid lien interest or obligation for PLAZA HOME MORTGAGE INC. on 10/26/2006 nor was there

7   a Valid Trustee in LAND-AMERICA SOUTHLAND TITLE.

8   c. Title and Ownership was vested in PLAZA HOME MORTGAGE INC. as the de facto Beneficiary on

9   10/26/2006 by the provisions of § 2934a of the California Civil Code in 1998 terminating the DEED OF TRUST

10   by virtue of the merger of the Trustee LAND AMERICA-SOUTH LAND TITLE with the lender PLAZA HOME

11   MORTGAGE, The DEED OF TRUST was unsecured, terminated and extinguished, on 10/26/2006 at closing as

12   a mortgage, by virtue of the merger of the Trustee LAND AMERICA-SOUTH LAND TITLE with the

13   "beneficiary" LENDER PLAZA HOME MORTGAGE INC under § 2934a of the California Civil Code; to wit:

14   "Restatement of the Law Third Trusts §69 "If the legal title to the trust property and the entire beneficial interest

15   become united in one person, the trust terminates." "Any time the trustee and the beneficiary (or the creator)

16   become the one and the same, the trust dissolves and disappears." Law of Trusts, Austin Wakeman Scott, 5

17   volumes, 1956; Scott on Trusts, 2 volumes.

18   d. The documents purporting to be a DEED OF TRUST and NOTE are Forgeries, Counterfeit Documents and

19   Instruments under §§ 3104(a)(b) (e), 3308(a) of the California commercial code.

20   3.        Plaintiff Relator objects to STATEMENT OF FACTS on the grounds that there was no default,

21   notice of default and election to sell on the grounds that the instrument involved is a SECURITY and

22   INVESTMENT CONTRACT and is not a Mortgage Loan and is time barred by the statute of limitations

23   under § 882.020 of the California civil code.

24   4.        Plaintiff Relator objects to STATEMENT OF FACTS that there was A valid Trustees Sale on Dec. 21st,

25   2017. Plaintiff incorporates the objections stated in a., b., and c. above by reference and are all undisputed facts

26   and evidence.

27

28   WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN
     SUPPORT THEREOF.  - 2

5. Plaintiff Relator objects to the STATEMENT OF FACTS that there was a Valid Trustee's Foreclosure Sale held on Dec. 21st 2017 or that Joseph Valdez was the Bidders agent at the sale or that title was then vested in DOOL & ASSOCIATES, PLAINTIFF RELATOR INCORPORATES by reference the objections in paragraphs a., b., & c. above. PLAINTIFF RELATOR JANICE CHAMPION OBJECTS ON THE GROUNDS There was no Legal or Lawful Public Auction Sale Executed or Conducted on 12/21/2012 or 12/21/2017 by a Bona Fide Purchaser for Value with a Legal, Lawful Bid or Tender for Cash, Cashiers Check Redempted in Lawful Money of Account or Exchange drawn on a state or national bank, state or federal credit union, a state or federal savings and loan association or savings bank specified in § 5102 of the California Financial Code and Article 1 § 10 of the Federal Constitution, authorized to do business in the state of California.

6. Plaintiff Relator OBJECTS to the STATEMENTS OF FACTS on the Grounds that PLAZA HOME MORTGAGE INC. was not the Lender on 10/26/2006,

7. All of the Exhibits 1-2, including but not Limited to the The NOTE, DEED OF TRUST, WRIT OF POSSESSION submitted by Defendants Counsel KIRSTEN B. SHEA are Forgeries and are Counterfeit under § 3308 of the California Commercial Code, (count 3) (Pen.Code, § 470, subd. (d)), forgery of a public seal (count 2) (Pen.Code, § 472), and recording a forged instrument (count 4) (Pen.Code, § 115, subd. (a)) and are 0bjected to on these grounds

"[F]orgery is committed when a defendant, by fraud or trickery, causes another to execute a . document where the signer is unaware, by reason of such trickery, that he is executing a document of that nature." People v. Martinez, (2008) 161 Cal.App.4th 754. And (People v. Parker (1967) 255 Cal.App.2d 664, 672, 63 Cal.Rptr. 413.)

The Clerk of the Hemet Superior Court is required by CAL RULE § 8.140 (A) (B) to serve Plaintiff Relator Janice Mae Champion with a document entitled "Notice of Entry" of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service, which neither the court or clerk ever did and the Motion to Dismiss 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled "Notice of Entry" of judgment or a filed-endorsed copy of the judgment, showing the date either was served;

WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN SUPPORT THEREOF. - 3

1  CAL RULE § 8.140 (B) "60 days after the party filing the notice of appeal serves or is served by a party with a

2  document entitled "Notice of Entry" of judgment or a filed-endorsed copy of the judgment, accompanied by

3  proof of service;

4  CAL RULE  8.140  (c) What constitutes entry;

5  For purposes of this rule:

6  (1)The entry date of a judgment is the date the judgment is filed under Code of Civil Procedure section 668.5,

7  or the date it is entered in the judgment book.

8  (2)The entry date of an appealable order that is entered in the minutes is the date it is entered in the permanent

9  minutes. But if the minute order directs that a written order be prepared, the entry date is the date the signed

10  order is filed; a written order prepared under rule 3.1312 or similar local rule is not such an order prepared by

11  direction of a minute order.

12  2018 California Rules of Court

13  **Rule 3.1312. Preparation and submission of proposed order**

14  **(a) Prevailing party to prepare**

15  Unless the parties waive notice or the court orders otherwise, the party
prevailing on any motion must, within five days of the ruling, serve by
16  any means authorized by law and reasonably calculated to ensure delivery
to the other party or parties no later than the close of the next business
17  day a proposed order for approval as conforming to the court's order.
Within five days after service, the other party or parties must notify the
18  prevailing party as to whether or not the proposed order is so approved.
The opposing party or parties must state any reasons for disapproval.
19  Failure to notify the prevailing party within the time required shall be
deemed an approval. The extensions of time based on a method of service
20  provided under any statute or rule do not apply to this rule.

21  *(Subd (a) amended effective January 1, 2011; previously amended effective
July 1, 2000, and January 1, 2007.)*
22

23  **(b) Submission of proposed order to court**

24  The prevailing party must, upon expiration of the five-day period provided
for approval, promptly transmit the proposed order to the court together
25  with a summary of any responses of the other parties or a statement that no
responses were received.

26
*(Subd (b) amended effective January 1, 2007; previously amended effective
27  July 1, 2000.)*

28  WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN
SUPPORT THEREOF. - 4

1  **(c) Submission of proposed order by electronic means**

2  If a proposed order is submitted to the court electronically in a case in
   which the parties are electronically filing documents under rules 2.250-
3  2.261, two versions of the proposed order must be submitted:

4  (1) A version of the proposed order must be attached to a completed *Proposed
   Order (Cover Sheet)* (form EFS-020), and the combined document in Portable
5  Document Format (PDF) must be filed electronically; and

6  (2) A version of the proposed order in an editable word-processing format
      must also be sent electronically to the court, with a copy of the e-
7     mail and proposed order also being sent to all parties in the action.

8   Each court that provides for electronic filing must provide an electronic
    address or addresses to which the editable versions of proposed orders are
9  to be sent and must specify any particular requirements regarding the
    editable word-processing format for proposed orders.
10

11  8. That no signed order by the Commissioner Kathleen Jacobs Was recorded or issued nor was any order

12  signed or issued by a Clerk of the Hemet Superior Court and Mailed to Plaintiff Relator Janice Champion.

13  9.      Plaintiff Relator OBJECTS THAT NDEX WEST, LLC a/k/a  Barrett, Daffin, Frappier, Turner &

14  Engel, LLP as a subdivision of the Dolan Company was a duly appointed  Involuntary Trustee under and

15  pursuant to the Deed  of  Trust  Recorded  on  11/01/2006  as  Instrument  No. 2006--0803949 of official

16  records in the office of the County Recorder of RIVERSIDE  County, State of CALIFORNIA..      Plaintiff

17  Relator  OBJECTS  that  Document  #  2006-0803949,  Trustee  Sale  #  20159902946,  Title  Order  #  1270502

18  purporting to be a Substitution of Trustee by NDEX WEST, LLC and signed by Elizabeth Hernandez Assistant

19  Secretary of ONE WEST BANK FSB is a ROBO SIGNER and does not work for ONEWEST BANK FSB

20  and is a Forgery and Invalid Document under California Code, Penal Code - PEN § 470 (c).

21  10.     Plaintiff Relator objects That none of STATEMENTS OF FACTS or TESTIMONY made by the

22  Defendants alleged Attorney KIRSTEN B. SHEA   IN HER MOTION TO DISMISS ARE ADMISSIBLE AS

23  EVIDENCE do to the fact that they are not verified or supported by a Declaration or Affidavit under Penalty

24  of perjury signed by KIRSTEN B. SHEA. All of Her Statements of Facts are Hearsay as a Third Party Witness

25  and do not fall within the Hearsay Exception under the Federal Rules of Evidence Rules 802 and 803;

26  ATTORNEY  KIRSTEN  B.  SHEA  LACKS  COMPETENCY  UNDER  F.R.E.  601  and  PERSONAL

27  KNOWLEDGE  UNDER  F.R.E.  602  and  her  Testimony  IS  NOT  SUPPORTED  BY  OATH  or

28  WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN
    SUPPORT THEREOF. - 5

1  AFFIRMATION UNDER F.R.E. 603 and is objected to on these Grounds. That none of STATEMENTS OF

2  FACTS or TESTIMONY made by the Defendants alleged Attorney  KIRSTEN B. SHEA in Her MOTION TO

3  DISMISS are authenticated or certified under F.R.E. RULES 901-903.

4  11.      PLAINTIFF  RELATOR  RESPONSES  AND  OBJECTIONS;  KIRSTEN  B.  SHEA  ATTORNEY  FOR

5  THE  DEFENDANT  SHERIFF  STANLEY  SNIFF,  Statements,  Testimony,  Facts  are  all  Hearsay,  Lack

6  Competency,  Knowledge,  Certification,  Authentication,  Seals,  Affidavits,  Declarations,  Verifications  and

7  Testimony  under  Oath  under  F.R.E RULES 401,402,  403,  601,  602,  603,  801,802,  803,M901,  902,  903,  1001,

8  1002 & 1003 by any Competent Fact Witnesses.

9  Porter v. Porter, (N.D. 1979 ) 274 N.W.2d 235 ñ The practice of an attorney filing an affidavit on behalf of his

10  client asserting the status of that client is not approved, inasmuch as not only does the affidavit become hearsay,

11  but it places the attorney in a position of witness thus compromising his role as advocate. Deyo v. Detroit

12  Creamery Co (Mich 1932) 241 N.W.2d 244 Statutes forbidding administering of oath by attorney's in cases in

13  which they may be engaged applies to affidavits as well.

14  "An attorney for the plaintiff cannot admit evidence into the court. He is either an attorney or a witness".

15  "Statements of counsel in brief or in argument are not sufficient for motion to dismiss or for summary judgment,"

16  Trinsey v. Pagliaro, D. C. Pa. 1964, 229 F. Supp. 647.

17  Trinsey v Pagliaro, D.C.Pa. 1964, 229 F.Supp. 647. "Statements of counsel in brief or in argument are not facts

18  before the court and are therefore insufficient for a motion to dismiss or for summary judgment." Pro Per and pro

19  se litigants should therefore always remember that the majority of the time, the motion to dismiss a case is only

20  argued by the opposing attorney, who is not allowed to testify on the facts of the case, the motion to dismiss is

21  never argued by the real party in interest.

22  "Where there are no depositions, admissions, or affidavits the court has no facts to rely on for a summary

23  determination." Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.

24  Subject: Trinsey v. Pagliaro, 229 F. Supp. 647: when you read it you will find that it is THE case cited for FR Civ

25  P 12(b) (6).

26

27

28  WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN
   SUPPORT THEREOF.  - 6

12. KIRSTEN B. SHEA ATTORNEY FOR THE DEFENDANT SHERIFF STANLEY SNIFF, STATEMENTS OF FACT, DOCUMENTS and TESTIMONY VIOLOATE Commission Rule 3.7 Lawyer as Witness (Proposed Rule Adopted by the Board on November 17, 2016)

(a) A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless:

(1) the lawyer's testimony relates to an uncontested issue or matter;

(2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or

(3) the lawyer has obtained informed written consent* from the client. If the lawyer represents the People or a governmental entity, the consent shall be obtained from the head of the office or a designee of the head of the office by which the lawyer is employed.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm* is likely to be called as a witness unless precluded from doing so by rule 1.7 or rule 1.9.

Comment

[1] This rule applies to a trial before a jury, judge, administrative law judge or arbitrator. This rule does not apply to other adversarial proceedings. This rule also does not apply in non-adversarial proceedings, as where a lawyer testifies on behalf of a client in a hearing before a legislative body.

[2] A lawyer's obligation to obtain informed written consent* may be satisfied when the lawyer makes the required disclosure, and the client gives informed consent* on the record in court before a licensed court reporter or court recorder who prepares a transcript or recording of the disclosure and consent. See definition of "written" in rule 1.0.1(n).

[3] Notwithstanding a client's informed written consent* courts retain discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced. See, e.g., Lyle v. Superior Court (1981) 122 Cal.App.3d 470 [175 Cal. Rptr. 918]. RRC2 - 3.7 [5-210] - Rule - XDFT1 (10-26-16).docx

Ethics in Brief;

Ethics in Brief is designed to present ethical issues that practitioners might well face on a daily basis. It is a service of the Legal Ethics Committee of the San Diego County Bar Association for SDCBA members.

---

13. KIRSTEN B. SHEA's  MOTION TO DISMISS is a VIOLATION of the 11th  Amendment for a FOREIGN CITIZEN to INVOKE  the JUDICIAL  POWER  of the State.

Article XI.

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

US citizens (FEDERAL CITIZENS) are FOREIGN to the several States and SUBJECTS of the FEDERAL UNITED STATES/STATE of NEW COLUMBIA/DISTRICT  OF COLUMBIA.

14.     KIRSTEN B. SHEA as an Attorney is considered a FOREIGN AGENT under the FOREIGN AGENTS REGISTRATION ACT (FARA) and are SUBJECTS of the BAR ASSOCIATION. Government Is Foreclosed from Parity with Real People      – Supreme Court of the United States 1795

"Inasmuch as every government is an artificial person, an abstraction, and a creature of the mind only, a government can interface only with other artificial persons. The imaginary, having neither actuality nor substance, is foreclosed from creating and attaining parity with the tangible. The legal manifestation of this is that no government, as well as any law, agency, aspect, court, etc. can concern itself with anything other than corporate, artificial persons and the contracts between them." S.C.R. 1795, Penhallow v. Doane's Administrators (3 U.S. 54; 1 L.Ed. 57; 3 Dall. 54).

15. KIRSTEN B. SHEA as an Attorney is a Member of the AMERICAN BAR ASSOCIATION and The 1944 HUAC [HOUSE ON UNAMERICAN ACTIVITIES COMMITTEE] history asserted that the NLG [NATIONAL LAWYERS GUILD] was merely "a streamlined edition of the International Juridical Organization", a Communist Party mass organization established in 1931.[15] The document charged that "the National Lawyers Guild has faithfully followed the line of the Communist Party on numerous issues and has proven itself an important bulwark in defense of that party, its members, and organizations under its control."[16] Particularly damning in HUAC's.

Historical/Biographical Note

Abraham Unger (1899-1975) was a lawyer, Communist, a founder and officer of the National Lawyers Guild and leader of its New York City Chapter, and beginning in 1948, partner in the law firm of Freedman and Unger. His

WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION  IN SUPPORT THEREOF. - 8

1  defendants included the Communist Party USA, various state-level Party organizations, individual Communists

2  and progressive activists, radical and/or Communist-associated labor unions and their leaders and activists, Puerto

3  Rican nationalists, and fellow lawyers charged with contempt and other crimes in connection with their defense of

4  radicals. Unger was a graduate of the New York University Law School. As a member of the International Labor

5  Defense, he took part in the preparation of the defense of nine young African American men convicted of rape in

6  Scottsboro, Alabama in 1931. Unger also defended the first twelve Communist Party USA top leaders indicted

7  under the Smith Act in 1949 (for conspiring to advocate the violent overthrow of the U.S. government), and was

8  himself indicted for contempt in 1953 for refusing to answer questions from Senator Joseph McCarthy before the

9  U.S. Senate Permanent Subcommittee on Investigations, including whether or not he headed the Party's section for

10  professionals. Unger also defended Puerto Rican nationalist Juan Bernardo Lebron who was charged as a

11  conspirator in the 1954 attack on the US House of Representatives, and petitioned for the commutation of Oscar

12  Collazo's life sentence for his 1952 attempted assassination of Harry Truman.

13  16. KIRSTEN B. SHEA as an Attorney has not denied that the Defendants were selling unregistered securities

14  and Plaintiff Relator Janice Champion  judicially Notices this Court under F.R.E. 201 (a) that UNDER F.R.C.P.

15  RULES 8b  and 36 (a)(3)(4) is an admission by Defendants Counsel that they were committing the acts alleged in

16  Plaintiffs Amended Complaint, Declaration and Memorandum  of Points & Authorities and that there was no

17  TITLE OR SECURITY  INTEREST  vested in DOOL and  ASSOCIATES  as Admissable  Evidence.

18  14.  Plaintiff Relator objects to    KIRSTEN B. SHEA  statement of facts  in the Memorandum of Points &

19  Authorities on the Grounds there has been no Ratification of Commencement by  a Real Party of Interest under

20  F.R.C.P.  17 (a)(3).

21  17. "There are material, factual and legal issues as to subject matter and in persona jurisdiction under Rules

22  17(a)(3) and  12b  (1)(2)(6) do  to the lack of Ratification of Commencement by the Real Parties in Interest that

23  needs to be addressed by this court and its trustees Sua Sponte as a threshold issue under Article 3 § 2 of the

24  National Constitution and that this court should not have granted a motion for relief of stay as a Party that seeks

25  relief from automatic stay must be a "real party in interest." 11 U.S.C.A. § 362(d); Fed. Rules Bankr. Proc. Rules

26  4001, 7017,  9014,  11 U.S.C.A.  In  re  Kang  Jin  Hwang  396  B.R.  757. Bkrtcy. C.D. Cal., 2008. October 29,

27  2008 (Approx 20 pages).

28  WRITTEN RESPONSE  WITH OBJECTIONS  UNDER LOCAL RULE 7-9 WITH DECLARATION  IN
SUPPORT THEREOF.   - 9

"Generally, a mortgage loan consists of a promissory note and security instrument, usually a mortgage or a deed of trust, which secures payment on the note by giving the lender the ability to foreclose on the property. Typically, the same person holds both the note and deed of trust. In the event that the note and the deed of trust are split, the note, as a practical matter becomes unsecured." Restatement (Third) of Property (Mortgages) § 5.4. Comment. The NOTE/SECURITY HAS BEEN SECURITIZED AND SEPARATED FROM THE DEED OF TRUST under § 2934a of the Cal. Civ. Code by the Defendants.

18. Plaintiff Relator has Claim in Recoupement as the ISSUER under §§ 3105 and 3305 (c) of the CAL COMM. CODE That after a diligent search under § 2941.7 of the California Civil Code, the Mortgagee's and Beneficiaries of record cannot be located and that Plaintiff Relator Janice Champion is entitled to a full reconveyance and release of lien by this Court as Public Trustee's as Recoupment under § 3305 of the California Commercial Code and a claim of a property or possessory right in the instruments and Their proceeds, including a claim to rescind negotiation and to recover the instruments or Their proceeds under § 3306 of the California Commercial Code as is outlined in 16 CFR § 433.2. § 3-305 (c) California Commercial Code "an obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument."

19. ALL OF KIRSTEN B. SHEA'S STATEMENTS ARE CONCLUSIONARY and call for Presumptions and Conclusions of Law based on Facts not in Evidence or in the COURT RECORD and are not Admissible as Evidence and are all Hearsay and are objected To on these Grounds UNDER F.R.E. RULES 401,402, 403, 801, 802, 803, 901, 9092, 903, 1001, 1002 & 1003.

20. Peter Baer is the CEO and owner of STRATEGIC ACQUISTIONS LLC and not the president, which is a false statement voiding his declaration and impeaching His testimony under F.R.E. RULES 607, 608 and 609.

21. SEC. v HOWEY AT 328 U.S. 293 (more) 66 S.Ct. 1100, 90 L.Ed. 1244, 1946 U.S. LEXIS 3159; 163 A.L.R. 1043 The S.E.C. sued the defendants over these transactions, claiming that they broke the law by not filing a securities registration statement. The Supreme Court, in issuing its decision finding that the defendants' leaseback agreement is a form of security, developed a landmark test for determining whether certain transactions are investment contracts (and thus subject to securities registration requirements). Under the Howey Test, a transaction is an investment contract if:

WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN SUPPORT THEREOF.  - 10

1. It is an investment of money;

2. There is an expectation of profits from the investment.

3. The investment of money is in a common enterprise.

4. Any profit comes from the efforts of a promoter or third party.

Although the Howey Test uses the term "money," later cases have expanded this to include investments of assets other than money. The term "common enterprise" isn't precisely defined, and courts have used different interpretations. Most federal courts define a common enterprise as one that is horizontal, meaning that investors pool their money or assets together to invest in a project. However, other courts use different definitions. The final factor of the Howey Test concerns whether any profit that comes from the investment is largely or wholly outside of the investor's control. If so, then the investment might be a security. If, however, the investor's own actions largely dictate whether an investment will be profitable, then that investment is probably not a security.

Substance Over Form;

In deciding Howey, the Supreme Court created a test that looks at an investment's substance, rather than its form, as the determining factor for whether it is a security. Even if an investment is not labeled a "stock" or "bond," it may very well be a security under the law, meaning that registration and disclosure requirements apply. After the creation of the Howey Test, some promoters masqueraded securities to try and escape registration requirements (such as by calling an offer of securities an interest in a general partnership). To deal with these charades, courts look at the economic realities behind an investment scheme, rather than at its name or form, to determine whether it is a security.

If an investment opportunity is open to many people, and if investors have little to no control or management of investment money or assets, then that investment is probably a security. If, on the other hand, an investment is made available only to a few close friends or associates, and if these investors have significant influence over how the investment is managed, then it is probably not a security.

Other Tests;

The Howey Test is not the only test that courts have used for determining whether an investment is a security. For example, in 1990, the Supreme Court created the "family resemblance test." This test provides a way for issuers of a note to show that the note should not be considered a security, by showing that the note has a "family

WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN SUPPORT THEREOF. - 11

1  resemblance" to other investments that are not considered securities. States have their own securities registration

2  requirements, which are often referred to as "Blue Sky" laws. Some states, such as California, use what is known

3  as the risk capital test that focuses mainly on the reasons why money or assets are being invested and what risks

4  the investment poses for any investors, to determine whether an investment is a security.

5  California Code, Commercial Code - COM § 3308;

6  (a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the

7  instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the

8  pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to

9  be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is

10  dead or incompetent at the time of trial of the issue of validity of the signature.  If an action to enforce the

11  instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a

12  party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as

13  a represented person under subdivision (a) of Section 3402 .

14  (b) If the validity of signatures is admitted or proved and there is compliance with subdivision (a), a plaintiff

15  producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under

16  Section 3301 , unless the defendant proves a defense or claim in recoupment.  If a defense or claim in recoupment

17  is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff

18  proves that the plaintiff has rights of a holder in due course which are not subject to the defense or claim.

19  22. Janice Mae Champion Relator Judicially Notices this Court under F.R.E. 201 (a) and KIRSTEN B. SHEA'S

20  that the Official Document of PIMCO BONDS THE US ARM OF ALLIANCE S.E. OUT OF MUNICH

21  GERMANY AND HEADQUARTERED IN CALIFORNIA. Newport Beach PIMCO 650 Newport Center Drive

22  Newport Beach, CA 92660 TEL +1 949-720-6000, FAX +1 949-720-1376 Shareholder services 6AM to 4PM

23  TEL 800-927-4648 and §§ 882.020, 882.030 and 882.040 [see BELOW] of the California Civil code Evidences

24  that the Transaction on 10/26/2006 was an Investment Contract with the Sale of Securities and not a Mortgage

25  Loan.

26  Mortgaged Backed Securities.

27  Bond Basics: Mortgage-Backed Securities

28  WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN
SUPPORT THEREOF. - 12

If you financed your home, there's a good chance that your mortgage is backing up a publicly traded security. That's because a high percentage of individual mortgages originated by banks and other lenders are ultimately pooled and used as collateral to issue mortgage-backed securities (MBS), which are then sold to investors.

What Are Mortgage-Backed Securities?

As the name implies, mortgage-backed securities are bonds that are backed by pools of mortgage loans. In the most basic type of MBS, homeowners' mortgage payments are passed through to the bondholder, meaning the bondholder receives monthly payments that include both principal and interest. This is a key difference between MBS and other bonds such as Treasuries, which pay interest every six months and return the whole principal at maturity.

There are several steps involved in creating a mortgage-backed security:

• A mortgage lender, such as a bank, extends a loan to a homeowner.

• The mortgage lender then sells the loan to one of the government sponsored enterprises (agencies), such as Fannie Mae or Freddie Mac (see below for more on MBS issuers) or to a private entity, like a bank or finance company. The lender may still service the mortgage, making this process invisible to the borrower.

• The agency or private entity then takes a number of the mortgage loans it has purchased and bundles them together into a "pool" (the actual number of individual mortgages in the pool can vary from a few loans to thousands of loans).

• The agency or private entity then sells claims on the cash flow generated by the pool of mortgages, in the form of securities, to investors. After the initial sale, MBS trade on the open market.

• Mortgage payments, consisting of interest and principal, are passed through the chain, from the mortgage servicer to the bondholder.

Who Issues Mortgage-Backed Securities?

MBS are issued and/or guaranteed by a U.S. government or government-related agency or by a private entity. Three major agencies are responsible for the majority of MBS issuance:

Government National Mortgage Association

GNMA or Ginnie Mae is a government agency that guarantees mortgage securities issued by approved private institutions (most are mortgage lenders). GNMA securities are the only MBS backed by the full faith and credit of

WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN SUPPORT THEREOF. - 13

1   the United States, the same guarantee afforded to U.S. Treasury bonds. This guarantee assures investors of the

2   timely payment of interest and principal.

3   CHAPTER 2. ANCIENT MORTGAGES AND DEEDS OF TRUST (§§ 882.020-882.040) (2208);

4   CAL. CIV CODE § 882.020. (a) Unless the lien of a mortgage, deed of trust, or other instrument that creates a

5   security interest of record in real property to secure a debt or other obligation has earlier expired pursuant to

6   Section 2911, the lien expires at, and is not enforceable by action for foreclosure commenced, power of sale

7   exercised, or any other means asserted after, the later of the following times: (2209)

8   (1) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is

9   ascertainable from the recorded evidence of indebtedness, 10 years after that date. (2210)

10  (2) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is not

11  ascertainable from the recorded evidence of indebtedness, or if there is no final maturity date or last date fixed for

12  payment of the debt or performance of the obligation, 60 years after the date the instrument that created the

13  security interest was recorded. (2211)

14  (3) If a notice of intent to preserve the security interest is recorded within the time prescribed in paragraph (1) or

15  (2), 10 years after the date the notice is recorded. (2212)

16  (b) For the purpose of this section, a power of sale is deemed to be exercised upon recordation of the deed

17  executed pursuant to the power of sale. (2213)

18  (c) The times prescribed in this section may be extended in the same manner and to the same extent as a waiver

19  made pursuant to Section 360.5 of the Code of Civil Procedure, except that an instrument is effective to extend the

20  prescribed times only if it is recorded before expiration of the prescribed times. (2214)

21  § 882.030. Expiration of the lien of a mortgage, deed of trust, or other security interest pursuant to this chapter or

22  any other statute renders the lien unenforceable by any means commenced or asserted thereafter and is equivalent

23  for all purposes to a certificate of satisfaction, reconveyance, release, or other discharge of the security interest,

24  and execution and recording of a certificate of satisfaction, reconveyance, release, or other discharge is not

25  necessary to terminate or evidence the termination of the security interest. Nothing in this section precludes

26  execution and recording at any time of a certificate of satisfaction, reconveyance, release, or other discharge.

27  (2215)

28  WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN
SUPPORT THEREOF. - 14

1 § 882.040. (a) Subject to Section 880.370 (grace period for recording notice) and except as otherwise provided in

2 this section, this chapter applies on the operative date to all mortgages, deeds of trust, and other instruments that

3 create a security interest in real property to secure a debt or other obligation, whether executed or recorded before,

4 on, or after the operative date. (2216)

5 (b) This chapter shall not cause the lien of a mortgage, deed of trust, or other security interest in real property to

6 expire or become unenforceable before the passage of five years after the operative date of this chapter. (2217)

7 23. Mortgage, Unlawful Detainer and Foreclosure does not apply to an INVESTMENT CONTRACT or the

8 SALE OF UNREGISTERED SECURITIES UNDER THE CALIFORNIA BLUE SKY AS A RISK CAPITAL

9 TEST as set forth in Plaintiff Relator Janice Champion Objections in paragraph 19 at Lines 8 & 9 under SEC. v

10 HOWEY328 U.S. 293 (more) 66 S.Ct. 1100, 90 L.Ed. 1244, 1946 U.S. LEXIS 3159; 163 A.L.R. 1043 FORM

11 over SUBSTANCE TEST which KIRSTEN B. SHEA has admitted in her Motion to Dismiss by Her Failure to

12 Deny under F.R.C.P. Rules 8b and 36.

13 23. KIRSTEN B. SHEA and Defendants Motion To Dismiss Should (1) Be Denied, Because There is no

14 Evidence and Testimony by Oath, Affirmation and Affidavit Before The Court and Testimony lacks Knowledge

15 and Competency Is all Hearsay and is not admissible as Evidence under F.R.E. Rules 401, 402, 403, 601, 602 and

16 603, 901-903, 1001-1003 of the F.R.E. and is In Sufficient To Support A Judgment In Favor Of PLAZA HOME

17 MORTGAGE INC. and the other Defendants.

18 24. Defendant's Motion to Dismiss is Frivolous, Lacks Substance and is Without Merit and involves Issues not

19 before this court and is a Diversionary Tactic by Defendants Counsel to Mask the Fraud being committed by

20 Defendant's and Their Counsel as outlined more fully Above and is objected to on these Grounds.

21 25. As an offer of Proof that this case is an Investment Contract and Securities violations by Defendants, Plaintiff

22 Janice Champion judicially Notices this Court under F.R.E. 201 that the Defendant PLAZA HOME MORTGAGE

23 INC. is TIME BARRED BY THE STATUTE OF LIMITATIONS OF CAL CIV CODE § 882.020 FROM

24 ASSERTING A JUDGMENT CLAIM for FORECLOSURE JUDGMENT, DEFAULT, NON PAYMENT,

25 UNLAWFUL DETAINER IN ANY COURT OF CALIFORNIA.

26 26. That the Loan Documents including but not limited to the LOAN APPLICATION, DEED OF TRUST and

27 PROMISSORY NOTE were never subscribed to, executed, signed or authenticated by Defendant PLAZA HOME

28 WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN
SUPPORT THEREOF. - 15

1   MORTGAGE INC. at closing on 10/26/2006 under the California Statute of Frauds § 1624 (a),(6) & (7) and are

2   inadmissible as Evidence under F.R.E. RULES 1001-1007 AND ALL OF THE COURTS IN CALIFORNIA

3   LACK ENFORCEABILITY and SUBJECT MATTER JURISDICTION UNDER F.R.C.P. RULES 12b(1) lack of

4   subject-matter jurisdiction;

5   (2) lack of personal jurisdiction;

6   (6) failure to state a claim upon which relief can be granted; and

7   (7) failure to join a party under Rule 19 and are OBJECTED TO ON THESE GROUNDS.

8   27. Plaintiff Relator Janice Mae Champion Judicially Notices the UNITED STATES DISTRICT COURT for the

9   CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION under F.R.E. 201 (a) and the Defendants

10   and Their Counsel of the Following Facts as Objections under Local Rule 7-9 and which are not subject to

11   Reasonable Dispute and are generally known within the Territorial Jurisdiction of this Court as a Court of Record,

12   that the Plaintiff Janice Mae Champion and Her Husband George Champion have Legal and Lawful Title to the

13   Real Property and the Land attached to it at 46601 Bautista Canyon Road, Hemet California 92**4 in Joint

14   Tenancy under a TRUST AGREEMENT TRUST ID # RE111564663US AS A REVOCABLE LIVING TRUST

15   AND FURTHER IN SPITE OF § 2934a OF THE CAL. CIVIL CODE effective of the Year 1998 and the

16   terminating of the DEED OF TRUST AS A TITLE DOCUMENT BY MERGER OF THE BENEFICIARY

17   PLAZA HOME MORTGAGE INC. WITH THE TRUSTEE LAND-AMERICA SOUTHLAND TITLE, Plaintiff

18   and Her Husband George Champion have Legal and Lawful Title to the Real Property and the Land attached to it

19   at 46601 Bautista Canyon Road, Hemet California 92**4 by ADVERSE POSSESSION SINCE THE YEAR

20   2003. As in most states, adverse possession in California is established from the nature of a trespasser's

21   possession and the length of time the person possesses the land.

22   A trespasser's possession must, in California, be (i) hostile (against the right of the true owner and without

23   permission); (ii) actual (exercising control over the property); (iii) exclusive (in the possession of the trespasser

24   alone); (iv) open and notorious (using the property as the real owner would, without hiding his or her occupancy);

25   and (v) continuous for the statutory period (which is five years in California under Cal. Civ. Proc. Code § 325).

26   California has another crucial requirement: An adverse possessor must show that he or she paid taxes on the

27   subject property for all of the five years.

28   WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN
SUPPORT THEREOF. - 16

28. Both Defendants and Plaintiff Relators Case are governed by the FEDERAL COMMON LAW under the Erie v Thompkins Decision 304 U.S. 64 (1938), is a landmark decision by the Supreme Court of the United States in which the Court held that federal courts did not have the judicial power to create general federal common law when hearing state law claims under diversity jurisdiction.

29. In Response to with objections to  KIRSTEN B. SHEA and Defendants Motion to dismiss Plaintiff asserts the following §§ 882.020-882.040 are in disputable as to the Statute of Limitations as grounds for denying Defendants Motion to Dismiss and Plaintiff  has the Authority to bring an Ex Relator Complaint under the False Claims Act of 31 USC § 3729,  based on the above facts Defendants Motion to Dismiss is Frivolous and without Merit.

29. This Case involves a Claim by the Plaintiff for Contribution and Indemnification under the California Code of Civil Procedure § 875 (c)(d)(e) based on the Primary Active Degree of Fault Rule by Defendants under THE PUBLIC POLICY OF 48 STAT. 113 of June 05, 1933 [31 USC § 5118 (d)(2) and the CCP § 875 (c)(d)(e)as an undisputed Fact and Objection under the; RIGHT OF CONTRIBUTION AMONG TORTFEASORS as a COMPULSORY COUNTERCLAIM UNDER FRCP 13 (a)(e);

 (a) Where a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided. This Claim Arises under Article III § 2 by Judicial Power to all cases of admiralty and maritime jurisdiction of the Federal Constitution, the F.R.C.P. 28 USC § 1333 and Rule 9h as an ADMIRALTY MARITIME CLAIM;

(b) Such right of contribution shall be administered in accordance with the principles of equity.

(c) Such right of contribution may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof. It shall be limited to the excess so paid over the pro rata share of the person so paying and in no event shall any tortfeasor be compelled to make contribution beyond his own pro rata share of the entire judgment.

(d) There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person.

(e) A liability insurer who by payment has discharged the liability of a tortfeasor judgment debtor shall be subrogated to his right of contribution.

WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN SUPPORT THEREOF.  - 17

(f) This title shall not impair any right of indemnity under existing law, and where one tortfeasor judgment debtor is entitled to indemnity from another there shall be no right of contribution between them.

(g) This title shall not impair the right of a plaintiff to satisfy a judgment in full as against any tortfeasor judgment debtor.

(Added by Stats. 1957, Ch. 1700.)

30. Plaintiff Janice Mae Champion Relator reserves the right to amend the Complaint to correct any deficiencies as a Matter of Law and Right.

DATED: June 11th, 2018

By: Janice Champion
Janice Champion Relator Plaintiff

WRITTEN RESPONSE WITH OBJECTIONS UNDER LOCAL RULE 7-9 WITH DECLARATION IN SUPPORT THEREOF. - 18